UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| CORA McMORRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:12-CV-264 |
| | ) | |
| AMERICAN SENIOR COMMUNITIES and CARDINAL NURSING, | ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This is an employment discrimination case concerning the suspension of an employee who got into a heated workplace dispute with a coworker over a pen. The Defendants have now moved for summary judgment. Plaintiff Cora McMorris, who is proceeding *pro se*, has not raised any issue of material fact that would indicate that her suspension had anything to do with race-based discrimination, nor has she demonstrated that her work environment was hostile. Thus, as discussed in detail below, summary judgment will be granted in Defendants' favor.

## BACKGROUND

McMorris is an African-American woman and a former employee of Cardinal Nursing and Rehabilitation Center in South Bend, Indiana, where she began working as a Certified Nursing Assistant in September 2010. (DE 64-1 at 24.) Cardinal is a senior housing and health facility managed by American Senior Communities. (DE 61 at 2.) Apparently, neither Cardinal nor American Senior Communities were technically McMorris' true employer, which was actually an entity called EagleCare, LLC, but that issue isn't fleshed out by the parties in the briefing. (DE 61 at 2 n.1.) As a result, we can address the merits of McMorris' claims and not

1

worry about sorting out what entity was truly her employer.[1]  For the sake of simplicity, I'll refer to Defendants collectively as "Cardinal."

McMorris' *pro se* Complaint against Cardinal alleges both racial discrimination and the existence of a hostile work environment.  (DE 1.)  The seemingly mundane incident that gave rise to these claims took place shortly after McMorris was hired.  On November 13, 2010, the daughter of one of the resident's at Cardinal asked McMorris if she could borrow an ink pen. McMorris, in turn, asked Robin Murphy, a Caucasian charge nurse, for such a pen.  (DE 60-2 at 15.)  Murphy obliged.  (*Id.*)  McMorris then gave the pen to the resident's daughter, who promptly returned it to McMorris after signing a form.  (*Id.*)  These first two pen transfers were by all accounts perfectly executed.  Something went awry, however, with the third transaction. McMorris extended the pen to Murphy, and Murphy reached out and took the pen – but, McMorris alleges, this taking was too vigorous. (*Id.*)  Indeed, McMorris characterizes the repossession of the pen as a "snatching." (DE 64-1 at 15.)  Caught off-guard, McMorris claims she "almost lost [her] balance." (DE 60-2 at 15.)  The operative word is "almost," as a security video of the incident revealed that McMorris did not in fact lose her balance. (DE 60-1 at 6.)

Tempers flared at this point. McMorris, voice raised, exclaimed: "You snatched the ink pen out of my hand." (DE 60-2 at 15.)  Murphy loudly replied that she had not snatched the pen, and then either McMorris or Murphy (accounts vary) asked the resident's daughter for affirmation.  (*Id.*; DE 64-1 at 9.)  The resident's daughter responded that Murphy "almost took

---

[1] To be liable under Title VII, an entity must be an employer. 42 U.S.C. § 2000e-2(a); *Isaacs v. Hill's Pet Nutrition, Inc.*, 485 F.3d 383, 385 (7th Cir. 2007).  Shortly before I filed this Opinion, McMorris submitted a motion to join EagleCare, LLC as a defendant, noting that, strictly speaking, she might well have been employed by that entity.  (DE 66.)  But whoever her true employer is, my decision on the merits remains the same, so this motion is **DENIED AS MOOT**.

In addition, Plaintiff filed an "Objection" to a discovery order rendered by Magistrate Judge Nuechterlein. (DE 58.)   That objection was docketed as a "Motion for Review of Magistrate Judge Decision."  That two-page filing is not, however, a "motion" as it does not actually move for any discernable relief.  The Clerk is therefore instructed to **TERMINATE** that filing.

[McMorris'] arm off." (DE 60-2 at 15.)  Several witness accounts confirm that McMorris and Murphy were shouting at each other.  (*Id.* at 9-10.)  Indeed, McMorris herself admits her reaction to the snatching of the pen created quite a scene, stating: "It was loud.  Anybody could of heard or seen what was going on." (DE 60-2 at 18.)  But it didn't stop there.  The security video and witness statements establish that McMorris, still shouting, approached Murphy in a threatening manner, leaned over Murphy's desk, and stated that Murphy didn't know who she was dealing with and that she had better never retrieve a pen like that again.  (DE 64-1 at 9-10.)  These actions made Murphy feel physically threatened.  (DE 60-1 at 3.)

Cardinal's Director of Nursing, Trina Wilson (herself an African-American (DE 60-2 at 18)), overheard the commotion and hurried to the scene to cool things down.  (DE 60-1 at 6.)  Wilson told McMorris and Murphy to lower their voices, whereupon McMorris turned and walked away.  (*Id.*; DE 64-1 at 9-10.)  According to Wilson and the reports of several observers, Wilson then told McMorris repeatedly that she needed to speak with her, but McMorris kept walking and did not acknowledge her supervisor. (DE 60-1 at 6; DE 64-1 at 12.)

Later that day, Wilson informed Sherry Harrison, Executive Director of Cardinal, of what had transpired.  (*Id.*)  Harrison told Wilson that McMorris needed to be suspended for yelling at her charge nurse in front of a resident's family member and for her "blatant disregard to respond to her supervisor." (*Id.*)  Harrison also noted that McMorris shouldn't even have been near Murphy and the nurses' station in the first place – the incident occurred around lunch time, when McMorris was supposed to be in the dining room assisting Cardinal residents. (*Id.*)

After an initial investigation, Cardinal determined that a three-day suspension of McMorris (without pay) was appropriate.  (*Id.* at 3.)  Cardinal cited McMorris' disruptive and threatening conduct and her insubordinate behavior as the overriding reasons for her suspension.

(DE 64-1 at 7, 15.) As Cardinal's Employee Handbook, a copy of which McMorris received and signed (DE 60-2 at 10-11), provides: "Conduct that negatively reflects on ASC's standards and ethics will not be ignored and conduct, [sic] which is disloyal, disruptive, competitive, or damaging to the Company and/or residents, will not be tolerated." (DE 66-1 at 13.) Murphy was not suspended, purportedly because her misconduct (if any) was less severe and because she was not insubordinate. (DE 60-1 at 3.)

On November 16, 2010, prior to lifting the suspension, Harrison met with McMorris and McMorris' husband, telling McMorris that, even if Murphy had grabbed the pen too quickly, yelling at Murphy in front of a resident's family member in a threatening manner was not the way she should have handled the situation. (DE 60-1 at 6.) Instead, she should have taken her concern to the Director of Nursing – the very person she ignored. (*Id.*) McMorris disagreed, stating: "I'm not going to let anybody snatch a pen out of my hand so hard I lose my balance and not do something about it." (*Id*.) Nevertheless, Harrison told McMorris that Cardinal was lifting the suspension, but that in the future McMorris would have to bring any issues she had with her coworkers to Harrison or Wilson rather than engaging in disruptive arguments in front of residents and their family members. (*Id*. at 7.)

On December 22, 2010, McMorris filed an EEOC charge against Cardinal, alleging racial discrimination. (DE 64-1 at 26.) After the EEOC completed its investigation, McMorris received a right-to-sue letter. (DE 1-1.) She did not receive a right-to-sue letter for her hostile work environment clam, as she never brought a hostile work environment claim to the EEOC. (DE 61 at 2; DE 65 at 11.) Finally, it is worth noting that while Cardinal has already voluntarily paid McMorris for the three days during which she was suspended, McMorris seeks $3.5 million in damages in this lawsuit. (DE 64-1 at 18; DE 1.)

4

## ANALYSIS

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). If this hurdle is cleared, the non-moving party must then set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Cliff v. Bd. of Sch. Comm'rs of City of Indianapolis, Ind.*, 42 F.3d 403, 408 (7th Cir. 1994). A genuine dispute about a material fact exists only if, "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials" (Fed. R. Civ. P. 56(c)), "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court makes this determination by "construing all facts and drawing all reasonable inferences in favor of [ ] the non-moving party." *Good v. Univ. of Chicago Med. Ctr.*, 673 F.3d 670, 673 (7th Cir. 2012). Although employment discrimination cases often turn on factual questions, they are nonetheless amenable to summary judgment when there is no genuine dispute of material fact or there is insufficient evidence to demonstrate the presence of the alleged motive to discriminate. *See Cliff*, 42 F.3d at 409.

McMorris claims that she was discriminated against by Cardinal and that she was subjected to a racially hostile work environment. I'll take up each of these allegations below.

**I.  Discrimination Claim**

Title VII, makes it an "unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race … " 42 U.S.C. § 2000e-2(a)(1).  To establish a claim of race discrimination, a plaintiff can take one of two routes.  First, she may proceed under the direct method using either direct or circumstantial evidence of discriminatory intent.  *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003); *Silverman v. Board of Educ. of City of Chicago*, 637 F.3d 729, 734 n.3 (7th Cir. 2011) (noting that the focus of the direct method is whether the evidence "points directly to a discriminatory reason for the employer's action").  Alternatively, a plaintiff can proceed under the indirect burden shifting method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Whittaker v. Northern Illinois University*, 424 F.3d 640, 645-646 (7th Cir. 2005).  McMorris has taken the latter route (DE 64 at 6; DE 61 at 5), so I will limit my discussion to the indirect method.

Under the *McDonnell Douglas* scheme, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by offering evidence (1) that she was a member of a protected class; (2) that she performed her job satisfactorily; (3) that she suffered an adverse action; and (4) that similarly situated individuals outside the protected group were treated more favorably.  *McDonnell Douglas,* 411 U.S. at 802-804; *Peters v. Renaissance Hotels Operating Co.*, 307 F.3d 535, 545 (7th Cir. 2002).  If she makes such a showing, the employer must offer evidence that there was a legitimate, non-discriminatory reason for its action. The burden then shifts back to the plaintiff to show that a jury could find that the reason articulated by her employer was a pretext.  *Ballance v. City of Springfield*, 424 F.3d 614, 617 (7th Cir. 2005).

McMorris' *prima facie* case probably turns on whether Murphy – who undoubtedly received more favorable treatment – can actually be considered "similarly situated" to McMorris. Cardinal has pointed to several compelling reasons why this is not the case (particularly the disparity between McMorris' threatening conduct and insubordination and Murphy's less disruptive, non-insubordinate behavior). Under the circumstances of this case, however, I will skip the *prima facie* analysis and move directly to the question of pretext. *See Keeton v. Morningstar, Inc.,* 667 F.3d 877, 885 (7th Cir. 2012) ("Although the question of pretext normally arises only after the plaintiff has established a *prima facie* case … we may skip over the initial burden-shifting of the indirect method and focus on the question of pretext."); *Bodenstab v. County of Cook,* 569 F.3d 651, 657 (7th Cir. 2009) ("[W]e can skip over the initial burden-shifting of the indirect method and focus on the question of pretext.").

Even construing every inference in McMorris' favor (as I must at this stage), there is uncontradicted evidence in the record that Cardinal had a legitimate, non-discriminatory reason to suspend her. Specifically, Cardinal believed that McMorris (1) threatened another employee, (2) engaged in disorderly conduct in front of a resident's family member, and (3) was openly insubordinate. (DE 65-1 at 5; DE 64-1 at 9-10.) Cardinal did not believe that Murphy was guilty of equivalent conduct. (DE 60-1 at 3.) These beliefs are reflected in the bevy of workplace incident forms and investigative findings that were completed in the hours and weeks following McMorris' outburst. (*See, e.g*., DE 64-1 at 2-14.) In other words, Cardinal made the decision to suspend McMorris only after Wilson and Harrison had gathered evidence that McMorris had been unprofessional and insubordinate.

Because Cardinal has provided a legitimate and non-discriminatory reason for its actions, the burden shifts back to McMorris: "to avoid summary judgment, [she] must present evidence

7

that the reason proffered by [Cardinal] is pretextual." *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005). Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000). On this front, the only relevant contention I can identify in McMorris' response to Cardinal's motion for summary judgment is that she was not insubordinate. (DE 64 at 3, 5-6.) She offers a number of unauthenticated affidavits from witnesses showing different versions of the facts surrounding the pen-snatching incident that led to her suspension, including the statements of two witnesses (both of them nurses, one a very late arriver to the scene) suggesting it might have been a nurse other than Wilson who called to and was ignored by McMorris. (DE 63-1.)

Even supposing that these unexplained and unauthenticated submissions should be accepted rather than stricken or ignored, McMorris has failed to present any evidence of pretext. Specifically, McMorris has two options for establishing pretext. First, she can establish pretext directly by showing that the employer "was more likely than not motivated by a discriminatory reason." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993). This route is plainly closed off to McMorris – she has presented absolutely no direct evidence of discriminatory motive on Cardinal's part.[2] Alternatively, McMorris may establish pretext indirectly "by presenting evidence that (1) defendant's explanation for the adverse job action had no basis in fact; (2) the explanation was not the 'real' reason for the adverse job action; or (3) the reason given was insufficient to warrant the adverse job action." *Logan v. Caterpillar, Inc.*, 246 F.3d 912, 920 (7th Cir. 2001). McMorris hasn't introduced any evidence of the latter two forms, so I will limit my analysis to the first type of indirect pretext evidence.

---

[2] Indeed, in response to a deposition question to McMorris inquiring whether she thought Wilson had a problem with her because of her race, McMorris replied: "No. Trina Wilson just have a problem period." (DE 60-2, at 22.)

McMorris has made an attempt to attack the factual basis on which Cardinal made its decision to suspend her, but falls far short of presenting any evidence showing that Cardinal's decision had *no* basis in fact. To state it plainly, it doesn't matter whether McMorris can create a genuine dispute about the factual minutia of the events that ultimately led to her suspension. What matters, rather, is whether Cardinal honestly believed the statements and video evidence it credited and honestly believed that its investigation came to the correct conclusion. *See Logan*, 246 F.3d at 921 ("In order to show pretext, however, '[i]t is not enough for the plaintiff to simply assert that the acts for which [s]he was terminated did not occur.' [Sh]e must provide some evidence that the employer did not honestly believe the reasons given for [her] discharge.") (internal citations omitted); *Giannopoulos v. Brach & Brock Confections Inc.*, 109 F.3d 406, 411 (7th Cir. 1997) "[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."); *Ballance v. City of Springfield*, 424 F.3d 614, 621 (7th Cir. 2005) (Our only job is to assess whether the justifications given by the [employer] for [plaintiff's] termination are honest. We do not sit as a super-personnel department with authority to review an employer's business decision as to whether someone should be fired or disciplined because of a work-rule violation.") (internal citation omitted).

McMorris has repeatedly accused Cardinal of engaging in a "sham" investigation and of fabricating a number of documents, including the corrective action form completed in the immediate aftermath of the pen-snatching incident. (DE 64 at 3, 7; DE 68 at 4-5.) McMorris

9

has not, however, offered a single piece of evidence to back up these claims. There is, thus, simply no genuine of issue of material fact here regarding pretext.[3]

To summarize my holding here: in order to meet her pretext burden, McMorris had to provide some evidence that Cardinal did not honestly believe McMorris was unprofessional and insubordinate, and in fact only offered that reason for discipline in order to cover up its real, racially-discriminatory reason. Because there is simply "nothing in the record to support a finding that [Cardinal's] stated reasons for . . . terminating [McMorris] were fabrications," *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 691 (7th Cir. 2008), Cardinal is entitled to summary judgment on McMorris' discrimination claim.

## II. Hostile Work Environment Claim

McMorris also alleges that she suffered a hostile work environment. Cardinal argues that this claims should be dismissed because the initial EEOC charge on which this lawsuit is based did not include a hostile work environment claim. (DE 61 at 2; DE 65 at 11.) It is true that a plaintiff "cannot bring claims in a federal lawsuit if they were not included in h[er] EEOC charge." *See Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). An exception to this rule, however, allows a plaintiff to "litigate claims which are like or reasonably related to the allegations in the [administrative] charge and growing out of such allegations." *Id.* at 691–92. Moreover, this standard is "a liberal one" that is "satisfied if there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint

---

[3] After the briefing had closed on the motion for summary judgment, McMorris filed a motion asking the Court's leave to supplement her response to Cardinal's summary judgment motion with additional exhibits. (DE 67.) In the interests of considering all evidence, especially in a *pro se* case, the motion is **GRANTED**. This additional evidence is, however, of no help to her case. The first document McMorris adds appears to be some sort of short, recently-made statement by Harrison in which she simply notes that Cardinal conducted an investigation into McMorris' suspension. (DE 67 at 5.) That's nothing new, and it doesn't speak to pretext. The second exhibit appears to be a December 2010 email exchange between Cardinal Human Resources employees. The emails indicate that Cardinal collected witness statements about the pen-snatching incident. (DE 67 at 7.) This, too, is not news.

could reasonably be expected to be discovered in the course of the EEOC's investigation." *Id.* at 692.

Given this liberal standard and given that McMorris is also afforded the leeway given to all *pro se* plaintiffs, I find that her hostile work environment claim is not procedurally barred here. That's little help to her, however, because it clearly fails on the merits. A hostile work environment claim requires McMorris to prove: "(1) that her work environment was both objectively and subjectively offensive; (2) that the harassment was based on her race; (3) that the conduct was either severe or pervasive; and (4) that there is a basis for employer liability." *Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011). At the very least, McMorris' case fails to satisfy the third element: she has not proven that her treatment was either severe or pervasive. The pen-snatching event at the heart of this case certainly cannot be described as sufficiently severe by itself. Moreover, there is no evidence of pervasive harassment: McMorris herself testified that the only other incident should could recall related to race was her (unsubstantiated) belief that a Caucasian nurse was not disciplined when she failed to correctly "punch in" for her shift. (DE 60-2 at 20-21.) Other than that incident and the pen-snatching, she could not recall anything else that happened to her because of her race. (DE 60-2 at 23.) This simply does not come close to qualifying as a hostile work environment. The Seventh Circuit has found that far more extreme work environments than the one described by McMorris still do not qualify as "hostile." *See*, *e.g.*, *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 567 (7th Cir. 2004) (no hostile work environment where "motherfucking black niggers," "motherfucking niggers," or "black motherfuckers," were used but not directed at the employee); *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002) (hotel supervisor's reference to black music as "wicka wicka woo music," suspicious treatment of African–American hotel guests, and one

incident where a co-worker used the word "nigger" in the employee's presence did not constitute a hostile work environment). Thus, summary judgment in favor of Cardinal is appropriate on McMorris's hostile work environment claim.

## CONCLUSION

Even construing all inferences in her favor, McMorris has not provided sufficient evidence that Cardinal suspended her with a discriminatory intent or that she worked in a hostile environment. Accordingly, the Defendants' Motion for Summary Judgment (DE 60) is **GRANTED**. The clerk shall **ENTER FINAL JUDGMENT** in favor of Defendants stating that Plaintiff Cora McMorris is entitled to no relief. The clerk shall treat this civil action as **TERMINATED**. The clerk is instructed to send a copy of this opinion to McMorris at the address on file with this Court.

**SO ORDERED.**

ENTERED: August 14, 2013

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT